```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
UNITED STATES OF AMERICA,                :
                                         :
                                         :      25cr502-2 (DLC)
              -v-                         :
                                         :      OPINION AND
CARLOS GAGOT,                            :          ORDER
                                         :
                        Defendant.       :
                                         :
---------------------------------------- X
```

APPEARANCES:

For the United States of America:
Connie Dang
United States Attorney's Office for the
Southern District of New York
26 Federal Plaza, 37th Floor
New York, NY 10007

For defendant Carlos Gagot:
Michael Rooney
Federal Defenders of New York for the
Southern District of New York
52 Duane Street, 10th Floor
New York, NY 10007

DENISE COTE, District Judge:

The defendant Carlos Gagot has moved to suppress the fruits of an automobile search conducted on October 11, 2025. For the following reasons, the motion is denied.

## **Background**

The following facts are undisputed. In August of 2024, the Drug Enforcement Administration ("DEA") began investigating a store in Inwood, a neighborhood in Manhattan, which sold

"narcotics cutting agents," non-narcotic materials that can be mixed with narcotics to reduce their potency and increase their saleable volume.  From August 2024 to February 2025, an undercover officer and a confidential source made multiple visits to the store.  During these visits, after the undercover officer and source asked to buy cutting agents, a store employee would retrieve a weighted black plastic bag from a nearby shed and give them the bag containing the cutting agents.

On August 11, 2025, DEA agents observed Carlos Gagot exit a vehicle from the passenger seat and enter the store.  Shortly thereafter, the agents observed an employee exit the store, go to the shed, and bring a weighted black plastic bag back to the store.  Gagot then exited the store and returned to the waiting vehicle.  The agents were not in a position where they were able to see what, if anything, Gagot was holding when he exited the store and re-entered the vehicle.

The agents followed Gagot as he rode in the vehicle to an apartment complex in the Bronx.  There, they observed him exit the vehicle and enter the apartment complex with a weighted black plastic bag that looked like the one retrieved by the store employee from the shed.  One agent followed Gagot into the building and learned from the apartment complex's security personnel that a resident gave Gagot permission to enter the

2

building and their individual unit, Apartment 9E.  The agent then followed Gagot into the elevator and rode it with him to the ninth floor.

Although the agent did not see which unit Gagot entered, the agent approached Apartment 9E and heard sounds consistent with those they would expect to hear when cutting narcotics. Specifically, the agents reported hearing cutting sounds, consistent with the act of cutting or breaking down narcotics; blender sounds, consistent with the act of mixing narcotics with cutting agents; and loud banging noises, consistent with the use of a kilogram press to press narcotics (after they have been mixed with cutting agents) into kilogram-shaped bricks.  The agents also reported hearing two male voices speaking from inside the apartment about money.

A few hours later, the officers observed Gagot exit the building and enter an Uber taxi with a weighted shopping bag. The officers followed the vehicle for a few blocks before pulling it over and conducting a warrantless search.  During the search of the vehicle, law enforcement seized the weighted shopping bag and found a closed shoebox inside.  They then opened the shoebox and recovered approximately two kilogram-sized bricks of what appeared to be narcotics, which later

tested positive for cocaine.  They did not seek or obtain Gagot's consent to search the shopping bag or the shoebox.

After recovering the two kilogram-sized bricks, the agents placed Gagot under arrest.  The Government then applied for a search warrant of Apartment 9E.  A Magistrate Judge authorized the apartment search.  Inside, the agents found large quantities of narcotics; materials and equipment used to prepare, mix, and press narcotics for wholesale distribution, including a blender and kilogram press; three firearms and ammunition; and large amounts of cash.

On October 27, 2025, Gagot was indicted on two counts: conspiracy to distribute controlled substances, and distribution of controlled substances.  At a conference on November 14, the Court ordered any defense motions due on March 13 and set Gagot's trial date for June 1, 2026.

On March 13, 2026, Gagot's counsel filed the instant motion to suppress.  It was supported by an affidavit from Gagot, who acknowledges that the shoebox in the shopping bag he carried contained "about two kilograms of cocaine."  Gagot also explains that "the officers did not ask me for permission to search the shopping bag, and I did not give them consent to search the bag or the box inside it."

4

The Government opposed the motion on March 20.  Gagot's counsel filed a reply on March 27, and the motion became fully submitted.

## Discussion

Gagot makes a single argument in support of his motion to suppress the two kilograms of cocaine recovered from the shoebox inside the bag he carried.  He asserts that the DEA agents lacked the requisite probable cause to search the vehicle and the shopping bag and shoebox within it.  Thus, Gagot contends, the search violated his Fourth Amendment rights.  This argument fails.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. Amend. IV.  "Warrantless searches are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions."  United States v. Babilonia, 854 F.3d 163, 178 (2d Cir. 2017) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)).  As relevant here, the Supreme Court has long recognized an exception for automobile searches.

Under the automobile exception, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits police to search the

5

vehicle without more."  United States v. Jones, 893 F.3d 66, 70 (2d Cir. 2018) (citation omitted).  "If the exception applies, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."  Babilonia, 854 F.3d at 178 (quoting United States v. Ross, 456 U.S. 798, 825 (1982)); see also Arizona v. Gant, 556 U.S. 332, 347 (2009) ("If there is probable cause to believe a vehicle contains evidence of criminal activity, [United States v. Ross] authorizes a search of any area of the vehicle in which the evidence might be found.").

Probable cause exists when "the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution in the belief that evidence of a crime will be found in the place to be searched."  Jones, 893 F.3d at 71 (citation omitted).  This probable-cause standard "is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act."  United States v. Stepello, 664 F.3d 359, 364 (2d Cir. 2011) (citation omitted).

The Government has established probable cause for the vehicle search.  A few hours before the search, DEA agents saw

Gagot entering a store that sold narcotics cutting agents and observed a pattern of activity consistent with a purchase. Shortly after Gagot entered the store, the DEA agents saw an employee exit the store, go to the shed, and bring back a weighted black plastic bag.  This is the same pattern of activity that the agents observed when, across a period of six months, they completed multiple undercover purchases of cutting materials from the same store and received the materials in black plastic bags.  The agents then observed Gagot leave the store, reenter the car that brought him there, and ride in the vehicle to an apartment complex in the Bronx.  There, the agents saw him exit the car with what appeared to be the same weighted plastic bag that the store employee brought back from the shed. After one agent followed Gagot to the ninth floor of an apartment building, the agent heard sounds from Apartment 9E -- the apartment unit that the defendant told security he was visiting -- that were consistent with the act of mixing narcotics with cutting agents and pressing the mixture into kilogram-sized bricks.  A few hours later, the officers witnessed Gagot exiting the apartment building and entering an Uber taxi with a weighted shopping bag.  These facts are sufficient to "warrant a person of reasonable caution in the belief that evidence of a crime will be found" in the Uber --

7

and, specifically, in the shopping bag that Gagot carried into it.  Thus, the agents had probable cause to conduct a warrantless search of not only the vehicle but also the shopping bag and shoebox within it.

In support of suppression, Gagot argues that the Government's case "suffers from multiple critical gaps in the chain of observations."  Specifically: (1) the agents were not in a position to see whether Gagot carried anything when he exited the store and reentered the vehicle, (2) the agent who followed him onto the ninth floor did not see which unit he entered, (3) the noises from Apartment 9E were "consistent with numerous lawful activities," and (4) the agents did not know for certain whether the weighted shopping bag Gagot carried when he exited the apartment building contained contraband.  But none of these so-called "gaps" vitiates probable cause.  "Although probable cause requires more than a mere suspicion of wrongdoing, it focuses on probabilities, not hard certainties." Dufort v. City of New York, 874 F.3d 338, 348 (2d Cir. 2017) (citation omitted).  And "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the probable-cause decision."  Id. (citation omitted).  The undisputed facts here are sufficient to establish that the law enforcement officers

8

had a reasonable belief that evidence of a crime would be found in the searched vehicle and, specifically, in the shopping bag. Their lack of an airtight case against the defendant, at the time of the search, does not bar a finding of probable cause.

Gagot also asserts that the officers did not have probable cause to search the vehicle because they did not personally observe him committing any crime. After all, the officers did not see him processing illegal narcotics or otherwise possessing contraband. Such an observation, however, is not required by the Fourth Amendment. As already explained, the facts here are sufficient to establish that the law enforcement officers had probable cause to believe that the Uber contained contraband and, in that situation, "the Fourth Amendment permits police to search the vehicle without more." Jones, 893 F.3d at 70 (citation omitted). Accordingly, the officers' search of the vehicle and its contents was lawful and the defendant's motion to suppress the two kilograms of cocaine recovered during that search is denied.

Lastly, Gagot has requested a hearing if this Court declines to grant his suppression motion. But he has not identified any facts that are in dispute and that are material to a ruling on the motion. Accordingly, there is no reason to conduct a hearing. See United States v. Kirk Tang Yuk, 885 F.3d

9

57, 77 (2d Cir. 2018) (evidentiary hearing is required if the moving papers show that "contested issues of fact going to the validity of the search are in question" (citation omitted)).

## Conclusion

The defendant's March 13, 2026 motion to suppress is denied.

Dated:      New York, New York
            April 3, 2026

                                _____
                                   DENISE COTE
                                United States District Judge

10